## In the Matter of VANDERBILT.

An *endorsement* or *label*, specifying particularly the cause of the *attachment*, is not necessary, where the writ is issued for a *contempt*, in disregarding an *injunction;* for the party attached is not to be bailed by the sheriff, but is to be brought forthwith before the *Chancellor*, to answer specific charges, who will order him to be bailed to appear, from day to day, until the party complaining has prepared the interrogatories, on which he is to be examined before a master.

The waters between *Staten Island* and the *Whitehall Landing*, in the city of *New-York*, are part of the *Bay of New-York;* and using them with a steam boat is a violation of an injunction prohibiting the navigating with such boat " the waters of the *Bay* of *New-York*, or in the *Hudson River*, between *Staten Island* and *Powles Hook*."

AN injunction was awarded in the case of *John R. Livingston* v. *Aaron Ogden and Thomas Gibbons*,* prohibiting the said *Gibbons*, and his agents and servants, from " navigating with any boat or vessel, propelled by steam or fire, the waters in the *Bay of New-York*, or *in the Hudson river, between Staten Island and Powles Hook*."

The injunction was duly served on *Vanderbilt*, as master of the steam boat *Bellona*, belonging to *Gibbons*, and on several of the persons employed in her.     On the 21st of *June, Hoffman*, the counsel for *J. R. Livingston*, moved for an attachment against *Vanderbilt*, and against *John Frost*, and *John Berbank*, on the following affidavits :

1. The affidavit of *William Wood*, stating, that the *Bellona* arrived on *Sunday*, the 20th of *June*, at the city of *New-York*, with passengers taken on board at *New-Brunswick* and *Elizabethtown Point*, in *New-Jersey*, and from the wharf of *D. D. Tompkins*, at *Staten Island.* That the passengers were landed at the *Whitehall* wharf, near the battery, and that the said *Gibbons* came in the boat to *New-York*.

June 30 and July 1.
* Vide ante, p. 48.

2. The affidavit of *John Carleton*, stating, that on the 20th of *June*, he saw the *Bellona*, while on her passage from *New-Brunswick*, stop at *Elizabethtown Point*, and take in passengers for *New-York*. That she sailed in company with the *Olive Branch*. That she stopped at the wharf of *D. D. Tompkins*, on *Staten Island*, and there took in other passengers, and carried the same to, and landed them and the other passengers in, *New-York*. That the boat, on the same day, received passengers at *New-York*, and transported them to *Staten Island*, and again, on the same day, took in other passengers from *Staten Island*, and landed them in *New-York*, and took in other passengers at *New-York*, and transported them to *Staten Island* and *Elizabethtown Point*. That *Cornelius Vanderbilt* was captain of the boat, and *John Frost*, engineer, and *John Berbank*, pilot, during the period aforesaid. That *Gibbons* came in the boat, on that day, to *New-York*.

The attachment was issued, in the first instance, without a previous rule to show cause.

*June 30th.* On this day, *Cornelius Vanderbilt* was brought before the Chancellor, at his dwelling house in *Albany*, by the sheriff of *New-York*, under the above process.

*Van Vechten* and *Henry*, in behalf of the prisoner, moved for his discharge: 1. Because, the attachment being general in the body of it, did not specify the nature or cause of the contempt, and had no *endorsement* or *label* in which the suit or cause of the attachment was particularly stated. The words of the attachment were, that the sheriff " attach, &c. so as to have the party before the court forthwith, to answer touching a certain contempt alleged to have been committed."

2. Because, the prohibition in the injunction only extended to the waters between *Staten Island* and *Powles Hook*, and not to the navigation charged.

*Bleecker* and *Sedgwick*, contra.

1819.

MATTER OF
VANDERBILT.

THE CHANCELLOR. In the case of ordinary contempts, where an attachment is used to enforce appearance, or an answer, the body of the process is still general, as in this case, but the suit and the cause of the attachment are endorsed on the writ, or appear in a label annexed, so that the party may at once comply, without application to the Court. (*Hinde's Pr.* 102, 103. 1 *Fowler's Ex. Pr.* 128.) But for extraordinary contempts, or wilful and direct violations of the process and powers of the court, where it is necessary that the party should be brought forthwith before the court, and is not to be bailed, there is no need or use of a label designating the case. The sheriff is not required to take bail upon attachment from Chancery. The case is not within the statute. It is settled at law (*Str.* 479. *Anon.* 2 *Saund.* 59. b. note 3.) that the sheriff cannot take bail on an attachment, though a judge at chambers may. In Chancery there is still less necessity for bail, as the court is always open, and the party may be brought in, at any time. The sheriff, on an attachment from Chancery, ought to bring the party into court without delay, and so it was understood in the case of *Studd* v. *Acton,* (1 *H. Black. Rep.* 468.) where it was decided by the C. B., after argument upon demurrer, that the sheriff was not required to take bail under process of attachment from Chancery, though it had been the usage to take bail in forty shillings. (*Danby* v. *Lawson,* 1 *Eq. Cas. Abr.* 351.) The old rule in chancery would seem to have been conformable to this decision of the C. B., and to be, that the party was not bailable by the sheriff upon attachment. (*Gilbert's Eq. Rep.* 84. *Prec. in Chancery,* 331. S. P.)

Of what possible use would a label be to the party? It might apprise him generally of the cause of complaint; but on his coming in, he may be bailed by the court to appear, *de die in diem,* until the party complaining has prepared his

1819.

MATTER OF
VANDERBILT.

interrogatories; and he is entitled, as soon as he appears, to know the specific grounds of complaint.

When an attachment issues, after a rule to show cause, (which is the usual and the safer course,) the party is duly apprised of the offence charged. If it be peremptory and absolute in the first instance, the party must appear forthwith, and answer specified charges; so that in any view of the case, the objection to the process appears to be groundless. It always rests in the discretion of the court, whether the rule for an attachment shall be absolute, or *nisi*. If the contempt appears, as it did in this case, on the affidavits, to be direct and palpable, wilful and extreme, the process frequently issues in the first instance. The doctrine at law, on this point, was declared in the Supreme Court, in *The Matter of Stacey*, (10 *Johns. Rep.* 328.) and the *English* authorities were referred to. The power of this Court is the same, and may be exercised more conveniently for the party, seeing that the court is always open.

Nor does there appear to be any weight in the second objection taken to the process. The affidavits stated a clear violation of the injunction which extended to the *waters in the Bay of New-York*; and the waters between *Staten Island* and *Whitehall* landing, at the city of *New-York*, clearly form part of the bay.

These preliminary objections being overruled, the sheriff was directed to bail the party in 100 dollars, to appear, from day to day, and not to depart without leave; and the plaintiff was directed to exhibit and file interrogatories in four days, and the party to be examined thereon before a Master.

*July* 1st.

The case came on to be heard upon the answers to the interrogatories taken before a Master, and was argued by the same counsel who argued the preliminary motion.

The party admitted, that on the 4th of *June*, he was served with the injunction, and denied that he had violated

it, or intended to do so, in any respect. That he had as- 1819.

MATTER OF
VANDERBILT.
sisted to navigate the steam boat *Bellona* on Sundays only,
(commencing on the 13th or 20th of *June*,) from the wharf
of *D. D. Tompkins*, on *Staten Island*, to *New-York*, and
back again, "in consequence of the said *D. D. Tompkins*
having hired the said boat *Bellona* to run, under his autho-
rity, as his boat, and on his ferry and steam boat right,
under a charter party or written agreement made and deli-
vered by him to the owner of the steam boat *Bellona*, in
presence of the deponent, whereby the said *D. D. Tomp-
kins* hired her for *Sundays* only for one month."—"That
he understood and believes, that the said *D. D. Tompkins*
owns the sole and exclusive right from the representatives
of *R. R. Livingston* and *R. Fulton*, deceased, and from *J.
R. Livingston*, the above plaintiff, &c. to navigate with
boats propelled by fire or steam from *Staten Island* to *New-
York*. That the owner of the *Bellona*, after receiving the
charter party or written agreement, instructed and directed
the deponent to run the boat on that route, on *Sundays* as
aforesaid, *as the boat of the said D. D. Tompkins*, and sub-
ject to his directions, as to hours, route, and passengers.
That the deponent had, in no instance, otherwise navigated,
or assisted to navigate, the *Bellona*, since the service of the
injunction, on the waters prohibited by it."

THE CHANCELLOR considered that the defendant had
sufficiently cleared himself of the contempt, and that the
boat *Bellona* was, on the day mentioned, the hired boat of
*D. D. Tompkins*, and not in the employment of *Gib-
bons;* and that the defendant was, *pro hac vice*, the agent or
servant of *D. D. Tompkins*, and not of *Gibbons*, against whom
the injunction was awarded. That the rights of *D. D.
Tompkins* were not now to be tried, and no fraud or collu-
sion, on purpose to evade the injunction, was averred or
suggested.

ORDERED, that the defendant be discharged from the at-tachment, with costs ; and that as to the other persons named therein, and not yet taken, the attachment, also, be deemed discharged.

Order accordingly.